ORIGINAL

December 5, 2006 Tuesday

Jeffrey D. Moffatt, Attorney
Borromeo Leyva, Petitioner
43625 N Sierra Hwy, Suite A
Lancaster CA 93534
(661) 945-6121
FAX (661) 945-3019
EMAIL: Jeffreymbajd@hotmail.com

FILED
DEC 12 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BORROMEO LEYVA
Petitioner

V.

No. 06-848 C

SECRETARY OF VETERANS AFFAIRS, DEPARTMENT OF THE ARMY
DEFENDANT

COMPLAINT

CONSTITUTIONAL VIOLATION/ VETERAN'S BENEFITS/ CORRECT MILITARY RECORDS/BACKPAY AND CORRECTION OF INJUSTICES, TO PRIVATE BORROMEO LEYVA

OPENING STATEMENT

1. The purpose of this complaint is to seeking back pay, disability benefits, and correct military records for PRIVATE Borromeo Leyva, (referred through out this document as PRIVATE Leyva,): retroactive from Jan 31st 1968. This suit is also seeking back pay and

correction of injustices suffered by PRIVATE Leyva due to the failure to properly categorize PRIVATE Leyva's disabilities as related to a gunshot injury and PTSD while in the Philippines and aboard US Army Transport ships.

2. To simplify the understanding of this case, Petitioner was living in the Philippines when the Japanese attacked in 1941. He joined the resistance which became a part of the U.S. Army by statute. Petitioner was injured in the line of duty and has been denied military benefits after his two year stay in a U.S. Military hospital because of the loss of part of his leg due to a combat gun shot, as well as disability and retirement benefits.

3. <u>STATEMENT IN SUPPORT OF CLAIM</u>

4. Petitioner was in the Philippine irregular forces. These forces became part of the US military. Petitioner has documentation he took US military training as well as was shot while on a mission directed to his unit by the U.S. Government. Petitioner was treated in a U.S. Hospital, where he stayed for more than two years. The hospital records show the injury was combat related. Petitioner is seeking benefits which related from the credited time of his service which start from the date he started the Philippine military, according to 38 C.F.R. 3.9(a), on December 10, 1941, to the date Petitioner was medically discharged from his more than two year stay in the U.S. military hospital on September 27. 1949. Given that Petitioner lost nearly two inches of his leg, and also suffers from PTSD he is seeking disability medical benefits, VA benefits, and Retirement benefits. These benefits should be retroactive using the rules in force in 1949, to September 19, 1949.

5. <u>HISTORY OF CASE</u>

6. Petitioner was facing he Japanese in the Philippines when the Japanese bombed Cavite,

Philippines December 10, 1941.

7. Petitioner joined the resistance since the Japanese were making slaves of the indigenous population.

8. The irregular army that Petitioner was a member of, Fil-American Irregular Troops, (Reyes Regiment) was inducted into the U.S. Military January 10, 1943.

9. Petitioner became attached to the 11th Airborne Division, in February 1945.

10. Petitioner was listed as a Current enlistee in the Armed Forces of the United States June 14, 1945.

11. CDD under the provision of US AR615-361 on September 27, 1949.

12. Petitioner was deemed by statute to have been a member of the U.S. Army and has attempted to correct those records multiple times. The last attempt was in 2002.

13. PRIVATE Leyva has submitted multiple requests for assistance by the Veterans Administration, (VA) for his gun shot, loss of leg length and PTSD injuries. However, due to the understaffing of the VA, combined with failure by the VA and the Military, to provide documents when requested that prove Private Leyva's claims of exposure to the gun shot wound and the PTST are valid, Petitioner finds himself unable to get a single cent in benefits, despite his attempt for over 57 years

14. Petitioner's injury were in part caused by a failure by Defendant to abide by Military, Federal and State Due Process requirements, as well as the U.S. Government's failure to abide by regulatory and statutory requirements, as well as failures to abide by the Geneva Convention. This case is also based on Constitutional violations.

15. In Hamdan v. Rumsfeld 05-184, citing the Geneva Convention Article 3, Stevens noted that it explicitly says its terms apply even in a "conflict not of an international character."

Justice Anthony Kennedy, in his concurring opinion, pointed out that violations of Article 3 were war crimes subject to severe punishment under statutes passed by Congress. Therefore, failure to provide for Military Veterans whom were shot and injured in the line of duty, as well as suffering from PTSD should be governed under the Geneva Convention Article 3 provisions.

16. COURT REVIEW OF VETERAN CLAIM.

17. This Court can review a denial of the Veterans Administration. This review may be performed under the standards of the Administrative Procedure Act which looks to determine if the following activities have taken place: (arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and unsupported by substantial evidence on the whole record; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law) in the U.S. Court of Federal Claims 28.U.S.C.S 1346 (a)(2) ("Little Tucker act) and 28.U.S.C.S 149(a)(1) (" Big Tucker Act').

18. JURISDICTION

19. This case is being brought under the Tucker Act, 28 U.S.C. 1491 (1988), since this case partially revolves around suit for money founded upon (1) the Constitution, (2) an act of Congress, (3) an Executive Order, (4) a Regulation of an Executive Department, or (5) any express or implied–in-fact contract with the United States. Members of the Uniformed Services claiming entitlements to military pay, or other compensation for services actually performed, can bring suit under the Tucker act, 28 U.S.C. 1491(a)(1)(1992).

20. Jurisdiction in the U.S. Court of Federal Claims is possible since there exists more than $4,800,000.00 for back pay, veterans' benefits, disability, death benefit and other issues subject to remuneration

21. INJUSTICES THAT PRIVATE LEYVA ENDURED WHILE SEEKING VETERAN'S BENEFITS

22. Injustices that PRIVATE Leyva endured while seeking Veteran's Benefits are contained in this document. That dilemma focuses around serving in the Military, being by statue included in the U.S. Military and for 57 years being denied benefits.

23. The 2006 Hamdan vs. Rumsfeld Supreme Court case 05-184 held that the U.S. base in Guantanamo, Cuba detained individuals should be held to the precepts of the UCMJ, Due Process and the Geneva Convention. The same precepts of the UCMJ, Due Process and the Geneva Convention required in Hamdan should similarly be applied to the U.S. Government's own military service members when they are Denied Due Process in based on the U.S. Government's fraud and or failure to apply settled law to Petitioner

24. STATUTE OF LIMITATIONS HAS NOT EXPIRED

25. Petitioner discharged from the military, effective September 27, 1949, with an honorable discharge. Petitioner obtained a ruling by an Administrative Law Judge that in fact he was a member of the U.S. Military from June 14, 1945 through September 27, 1949. Petitioner has been unable to get the U.S. Military to accept this decision, but rather denied this ruling, despite the fact Petitioner should be able to have his service start in 1941.

26. In 2003 Petitioner received a denial by the Board of Corrections of the Army to modify

status to reflect Petitioner's service with the U.S. Military. He was denied that modification. This denial in the face of statues on point, as well as an Administrative decision on point as to Petitioner, re-opens the door for litigation; therefore, statute of limitations has not expired. Additionally, since the Government i.e. concealed from public view Petitioner's rightful status as a member of the U.S. Military, this concealment by itself allows the Statute of Limitations not to have run against Petitioner. Because of the past and present failure to adequately disclose Petitioner's status, as well as to adequately compensate Petitioner as an injured Veteran of a foreign war, presently and in the past, the Statute of Limitations should only start at the time the Government has fully identified and compensated Petitioner. Since this has not yet fully happened, it seems reasonable to argue the Statute of Limitations has not even started. As such, Petitioner's case is not past the Statute of Limitations.

27. VETERAN'S DISABILITY BENEFITS

28. Petitioner was serving on Active service, and since Petitioner was disabled in the Line of Duty, Veterans Benefits should be available to Petitioner, 38 U.S.C.S. 101(16); 38 C.F.R. 3.1 (k), 3.303(a) (2005). The United States was on a war footing with Japan, and later surrender treaty at the date of Petitioner's injury and later discharge. Petitioner will argue that the injury occurred during a time of War.

29. Even if the injury is not deemed to have occurred during war time, because of Petitioner being ordered to, for the benefit of the U.S. Army, protect against Japanese Military stragglers that didn't know of Japan's surrender, or were unwilling to recognize the surrender and the communist insurrection. Petitioner's duties and concurrent injury while performing those duties satisfies the In Line Of Duty Requirement of 38.C.F.R.

3.303, 3.304 (2005).

30. The denial of medical benefits to a service Member violates Title 38, of the U.S.C. As soon as knowledge of Petitioner's injuries from Petitioner's was known, the VA was advised.

31. The VA acknowledged Petitioners injury was service connected and absolved Petitioner of any financial responsibility for paying for the medical treatment for the gunshot wounds.

32. The VA even on September 28, 1949 provided Petitioner with a document titled Certification. This letter states "[t]his is to certify that Pvt Borromeo I. [Levba spelling error on original file] 1001886 Inf. Who was admitted in this hospital on 22 April 1947 and was discharged from sv AFP, under the provisions of US AR 615-361 for physical disability contracted in line of duty eff 27 September 1949 per SO #182 par 2 HNDF dtd 8 August 1949 as per records on file in this office was cleared for all government property responsibility and money accountabilities in this hospital. Signed by Potenciano Baccay 1st Lieut. MAC Actg Co, Det of Patients.

33. Despite this acknowledgement by Potenciano Baccay, 1st Lieutentant that Petitioner's injury came from the line of duty, Petitioner has been unable to obtain subsequent VA medical benefits, educational benefits, disability benefits and retirement benefits.

34. SPECIAL COMPENSATION

35. Under 10 U.S.C. Section 1413(a) Petitioner would qualify for twenty-five (25) years of service if Petitioner were not too sick to stay in the military, as well as, qualify for a disability that is compensable under the laws of the Secretary of Veterans Affairs and while engaged in hazardous service when Petitioner was injured from a combat gun shot

as well as PTSD. hiAs such, Petitioner should be able to request Special Compensation under 10. U.S.C. S. Section 1413(a).

36. MILITARY PAY

37. This case is being requested under (1) A statutory and regulatory challenge to a service member's separation and (2) A claim for military retirement benefits. Petitioner's authority to provide relief in this matter is governed by the terms of the Back Pay Act, 5 U.S.C. § 5596 (1976). The Act provides that, on correction of an erroneous personnel action an employee of an executive agency of the federal government is entitled to receive: "an amount equal to all or any part of the pay, allowances, or differentials, that the employee normally would have earned", Polos v. United States, 231 Ct. Cl. 929.

38. ENLISTED PERSONNEL CLAIM

39. The challenged adverse personnel action was grounded in either a statutory or regulatory violation; therefore, this case satisfies Brigante v. United States, 35 Fed. Cl. 526, 529 (1996).

40. RETIREMENT BENEFITS AND OR SEVERANCE PAY

41. Petitioner was injured by a gunshot while in the line of service as well as suffering from PTSD exposure while on active duty. Since Petitioner was injured while on active duty the Court of Federal Claims possess jurisdiction to entertain the Secretary's decision not to appoint Petitioner to a disability list, 10 U.S.C. 1201-21 (1992), Sawyer v. United States, 930 F. 2d 1577.

42. JURISDICTION FOR ADVERSE ACTIONS TAKEN UNDER THE UCMJ

43. Under Burns v. Wilson, 346 U.S. 137 (1953), since Petitioner has exhausted all of his administrative remedies, and the VA denied Petitioner's case in 2002, the Court of

Federal Claims may entertain this case.

44. MISCELLANEOUS STATUTES

45. The Court of Federal Claims possess jurisdiction to determine the amount, if any, due to or from the United States, by reason of any unsettled account of any officer, agent of, or contractor with the United States, or a guarantor, surety, or personal representative of any such officer, agent, or contractor. 28 U.S.C. 1494, 2511 (1988).

46. Petitioner was disabled and discharged this effects Petitioner's ability to qualify for Federal Retirement, prior to age 65, from the Federal Government, whom is a guarantor of Petitioner's benefits for Federal Retirement. Petitioner should have been granted disability, as well as retirement benefits.

47. CONSTITUTIONAL VIOLATIONS

48. Petitioner has been denied his Due Process rights under both the Fourteenth and Fifth Amendments, when Petitioner was denied his VA benefits without being provided a proper hearing, or without the VA recognized military statutes which provided for Petitioner to be given U.S. military status. The VA has long known of the injury Petitioner suffered, since he was partially treated in the VA hospital where he lost part of his leg from the gunshot. The respective cover up has denied Petitioner his Constitutional rights, by the unlawful taking of Petitioner's property including, but not limited to, early retirement, disability benefits for the injuries Petitioner suffered while on duty, as well as, the lost income Petitioner would have received if he had not been discharged prior to the completion of 25 years of service.

49. CONSENT FOR SUIT

50. In Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995), the United States consented, in the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq., to be sued for damages for personal injury caused by "the negligent or wrongful act or omission" of a federal employee "while acting within the scope of his employment," and provided that in the same circumstances a Private employer would be liable for the acts of his employee under the local law, 28 U.S.C. §§ 1346(b), 2674, 2675(a). No explicit exception bars claims by or against military personnel.

51. BACK GROUND OF MILITARY SERVICE

52. Petitioner and Petitioner's family became engaged with the irregular forces when the Phillipine islands were attacked by the Japanese invasion on December 10, 1941.

53. Petitioner was inducted into the Fil-American Irregular Troops (Reyes Regiment) on June 10, 1943.

54. Petitioner was attached to the 11th Airborne Division, US Army February, 1945.

55. Petitioner was listed as a current enlistee in the Armed Forces of the United States on June 14, 1945.

56. Petitioner went to Military Police Training school and received a diploma on 8/4/1945 and was then placed on a U.S. ship to invade Japan.

57. On 8/6 an 8/9/1945 atomic bombs were dropped on Hiroshima and Nagasaki.

58. The US Army directed Petitioner's company to proceed to Central Luzon in the Philippines to fight the Communist group. This group went by the name of Hukbalahaps.

59. Petitioner was CDD under the provisions of the US AR 615-361, on September 27, 1949

60. DOCUMENTS PETITIONER HAS WHICH WILL BE ADMITTED INTO EVIDENCE IN THIS CASE IF NECESSARY

61. Special Order of appointment on June 10,1943

62. Oath of Office, Feb 2, 1945 in the Battle of Intramuros, when American Forces arrived in Manila, the Fil_American Irregular Troops was attached to the 11th Airborne Division, U.S. Army.

63. Petitioner was issued an 11th Airborne Division Guerilla Pass #I by 1st Lt. James E. Polka.

64. April 17, 1945 is the date of recognition where FIL- American Irregular Troops b the 11th Airborne Division, US Army APO 468.

65. On May 9, 1945 Petitioner was placed by the 11th Airborne Division to replace the 3rd Replacement Battalion APO for shipment to Japan.

66. Petitioner was a current enlistee as of June 14, 1945.

67. PA Ago Form 55(Form 55A, Medical Department US Army) Clinical Record evidence of discharge due to CDD.

68. Military Police Training School Diploma, awarded on 5th 1945.

69. While fighting the Hukbalaphs, Petitioner was insured via the Army through the National Service Live Insurance group for $3,000. A copy of the Insurance Police exists with Petitioner.

70. This policy was approved by General Omar M. Bradley on November 18, 1946.

71. An affidavit of Captain Celso del Rosario stating Petitioner was activated to the 29th MP Company.

72. Report of Physical examination of enlisted personnel prior to discharge, release from active duty or retirement signed by B.H. David dated May 31, 1949 from the Medical Department of the U.S. Army. This document shows the date of injury was Jan 29th,

1947 while in combat with the Hukbalaphs. This document also shows petitioner lost part of his leg, and was hospitalized for two years and several months from this injury all while in the line of duty.

73. Certification Petitioner was discharged from service on 27, 1949 under provision of US AR 615-361.

74. Veterans Service Officer Jimmie C. Bergeson, on July 6, 1994 stated that Petitioners file indicated a validated period of service from June 14, 1945 to June 30, 1946.

75. Adjudication Officer Jay E. Carrick

76. An Administrative hearing in 1996, where the ALJ argued Petitioner's service started June 14, 1945 through September 27, 1949. Note this ALJ decision is counter to 38 CFR 3.9(a) which show the active service date is from the date of enlistment into the Philippine army, which was actually June 10, 1943.

77. US <u>MILITARY LAW RELATING DIRECTLY TO PHILLIPINE ARMY</u>

78. 38 CFR 3.9(a) states that a member of one of the recognized components of the Philippine commonwealth Army, the date of active service will be from the date of enlistment to the date of discharge.

79. HISTO<u>RY OF ATTEMPTS TO GAIN BENEFITS</u>

80. Application for benefits started in 1949, through present.

81. Petitioner went to the California Department of Veterans Affairs as of July 12, 2005 and was advised they have no authority over federal agencies.

82. <u>VIOLATIONS WHICH TOOK PLACE WHILE ON ACTIVE DUTY</u>

83. The "sham" non-judicial/administrative proceeding by the VA in this case denied

Petitioner, PRIVATE Leyva, military Due Process recourses of action. When the VA has in its possession a discharge of Petitioner from a military hospital after more than two years of hospital time for a combat injury, as well as a partial determination by an ALJ of at least part of Petitioner's service and yet continues to deny benefits to Petitioner is wrong to the level of criminal negligence. Denied coverage to deserving individuals when documents in the governments own records indicated that coverage was proper, gives credence to Petitioner's argument that he was denied a proper VA proceeding.

84. This "sham" non-judicial/administrative proceeding isolated itself from regulation, military and procedural laws, that are part and parcel of serving in the Military.

85. PRIVATE Leyva's "sham" non-judicial/Administrative hearing violated multiple military regulations, at the same time, violating the spirit of the UCMJ, which is engrained and indoctrinated in every soldier.

86. <u>MEDICAL DOCUMENTATION</u>

Medical documentation exists showing the complications Petitioner has, as well as the claim by Petitioner's that he lost nearly two inches of his leg through a combat related gunshot.

WHEREFORE, Petitioner requests a judgment against The United States in the amount of $4,800,000.00.

Respectfully submitted,

Jeffrey D. Moffatt, Attorney
U.S. Court of Federal Claims
Attorney for Petitioner Borromeo I. Leyva

(661) 945-6121 / Fax (661) 945-3019

43625 N Sierra Hwy, Suite A.
Lancaster, CA 93534
E-mail Address: jeffreymbajd@hotmail.com