TOTAL P.06

**IN THE APPEAL OF**

BORROMEO I. LEYBA

C 12 157 754

# BOARD OF VETERANS APPEALS
WASHINGTON, D.C. 20420

**FINDINGS AND DECISION** ) **DOCKET NO.** 80-16 462

**DATE** AUG 28 1980

## THE ISSUE

Entitlement to service connection for the residuals of a gunshot wound of the left thigh.

## CONSULTATIONS BY THE BOARD

C. H. Witt, Staff Legal Adviser

MAR-21-2007 10:19 022 202 273 6315 P.06

CONTENTIONS

Essentially, the veteran contends that he was performing service which should be recognized for Veterans Administration purposes at the time that he received a left thigh wound. He relates that he performed various service from the time of his induction into an irregular unit in 1943 until he was separated due to disability in September 1949 as a result of the thigh wound which he had received in January 1947. Among other matters, he notes that he was issued National Service Life Insurance in November 1946 and that he was never formally separated or discharged from the United States Army. He indicates that his status as a member of the United States forces is also buttressed by the refusal of Philippine authorities to grant disability benefits.

THE EVIDENCE

In April 1949, the United States Army reported that the veteran had no recognized guerrilla service and that he was not a member of the Philippine Commonwealth Army inducted into the service of the Armed Forces of the United States. An additional report was received from the United States Army in January 1950. In this report, it was indicated that the previous certification was deemed to be correct.

A third report was received from the Army in June 1950. This report indicated that the veteran was a "Current Enlistee." The beginning date of his service in the Armed Forces of the United States was June 14, 1945. He was released from the service of the Armed Forces of the United States on June 30, 1946, while still a member of the Philippine Commonwealth Army. His status during the period of recognized service was as a member of the regular Philippine Army.

Numerous documents have been submitted in support of the veteran's claim. These include a copy of a special order showing the veteran's appointment to the Reyes Regiment of the Fil-American Regular Troops and a copy of a related oath of office (ostensibly dated in June 1943), an undated pass issued by the 11th Airborne Division, a June 1945 physical examination report showing no musculoskeletal defects, an August 1945 certificate attesting to the veteran's completion of basic military police training, a November 1946 National Service Life Insurance certificate, clinical records showing that the veteran received a gunshot wound of the left thigh in January 1947 while in combat against the "Huks," a November 1948 Philippine Army separation physical



MAR-21-2007 10:18 022 202 273 6315 P.02

examination report noting the residuals of the thigh wound, special orders issued by the National Defense Forces in 1949 directing the veteran's honorable discharge from the "AFP" because of physical disability contracted in the line of duty, a certificate showing the veteran's discharge from the Army of the Commonwealth of the Philippines in September 1949, and a September 1949 certificate attesting to the fact that he had been cleared of responsibility for Government property and money at a hospital. Numerous affidavits have also been submitted. These attest to the veteran's induction into a Guerrilla unit in June 1943, to his loyalty and devotion to duty, to his induction into United States forces in 1945, to his service as a military policeman, to his injury in the line of duty in January 1947 and related treatment and infirmities, and to the lack of orders formally terminating the status of members of his unit as part of the United States forces.

## THE LAW AND REGULATIONS

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by wartime service. (38 U.S.C. 310)

The following certificates by the service departments will be accepted as establishing Guerrilla service: (a) Recognized Guerrilla service; (b) unrecognized Guerrilla service under a recognized commissioned officer only if the person was a former member of the United States Armed Forces (including the Philippine Scouts), or the Commonwealth Army. This excludes civilians. (38 C.F.R. 3.8(d)(2))

For a regular Philippine Scout or a member of one of the recognized components of the Philippine Commonwealth Army while serving with the Armed Forces of the United States, the period of active service will be from the date certified by the Armed Forces as the date of enlistment or date of report for active duty, whichever is later, to the date of release from active duty, discharge, death, or in the case of a member of the Philippine Commonwealth Army, June 30, 1946, whichever was earlier. (38 C.F.R. 3.9(a))

When a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. A reasonable doubt means a substantial doubt and one within the range of probability as distinguished from speculation or remote possibility. (38 C.F.R. 3.102)



MAR-21-2007 10:18 022 202 273 6315 P.03

## DISCUSSION AND EVALUATION

This Board does not question the assertion that the veteran served honorably and well and that he was injured in January 1947 while performing official duties. The difficulty is that this injury occurred well after the time when service which may be recognized for Veterans Administration purposes terminated.

The Veterans Administration is bound by the service dates reported by the United States Army. The veteran may well have performed services in a Guerrilla unit prior to the time that he became formally associated with the United States forces, but such service has not been recognized by the Department of the Army. There is no indication that the veteran was a former member of the United States Armed Forces or the Commonwealth Army prior to the commencement of Guerrilla service. Accordingly, the beginning date of recognized service is June 14, 1945.

We do not question the fact that the veteran continued to serve after June 1946, but he did so as a member of the Army of the Commonwealth of the Philippines. As both the report from the United States Army and controlling regulations show, the recognition of such service for United States Veterans Administration purposes ceased on June 30, 1946.

The fact that the veteran may have later received National Service Life Insurance has no bearing upon his status at the time of his wound. Neither does a lack of formal orders concerning the termination of prior status. The question of entitlement to benefits under Philippine law is, of course, a matter over which this Board has no jurisdiction. While we are extremely sympathetic with the veteran's claim, it is quite clear that his gunshot wound was not incurred in "service" within the meaning of laws and regulations applicable to the Veterans Administration.

## FINDINGS OF FACT

1. The veteran performed service which may be recognized for Veterans Administration purposes from June 14, 1945, to June 30, 1946.

2. A gunshot wound of the left thigh was not incurred until January 1947.



MAR-21-2007 10:18 022 202 273 6315 P.04

## CONCLUSION OF LAW

The residuals of a gunshot wound of the left thigh were neither incurred in nor aggravated by service. (38 U.S.C. 310; 38 C.F.R. 3.102, 3.8(d)(2), 3.9(a))

## DECISION

Entitlement to service connection for the residuals of a gunshot wound of the left thigh has not been established. The benefit sought on appeal is denied.

H. CLAYTON ADAMS

BROOKS G. BROWN, M.D.

R. B. STANDEFER