July 13, 2007, Friday

Jeffrey D. Moffatt, Attorney
Attorney for, Plaintiff
43625 N Sierra Hwy, Suite A
Lancaster CA 93534
(661) 945-6121
FAX (661) 945-3019
EMAIL: Jeffreymbajd@hotmail.com

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-848C

BORROMEO LEYVA,
Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

***(Honorable Judge Margolis)***

V.
THE UNITED STATES,
Defendant.

## A. SUMMARY OF THE ARGUMENT

The Complaint should go forward based on proper subject matter jurisdiction since Plaintiff identified multiple money-mandating statutes providing for jurisdiction under the Tucker Act. Case law provides for the review of disability military decisions, which is one of the key points of this case. Additionally, case law provides for review of arbitrary and capricious decisions, as well as to determine if proper procedures were followed. The review of the failure of the military to follow proper procedures are jusdiciable and therefore reviewable.

This reviewability gives Plaintiff yet other arguments that he is properly before the

correct Court.Defendant has denied Plaintiff and others like him for over sixty (60) years benefits related to their service in the United States Military. Plaintiff was transferred from the Reyes Regiment of the Philippines, to the 3rd Replacement Battalion of the U.S. Army. Plaintiff was processed into the U.S. Army, at Camp Murphy in Quezon City, Philippines in 1943.

Plaintiff trained at Camp Albang, in the Carbine, Thompson, Garand, 50 caliber and 60 ml Trench Mortar. Upon Plaintiff's completed training he was issued originally a Garand, and then a Carbine. He then became part of the 20th MP Company of the U.S. Army. This unit was assigned to Special Forces training.

Plaintiff was one of approximately 150 Philippine U.S. troops that were loaded upon transport ships on a Japanese invasion plan. This plan was scuttled when the atomic bomb was dropped on Hiroshima on August 6, and Nagasaki on Agust 9th. This transport ship changed direction and went to Ilocos Sur, in Nothern Luzon, Philippines.

This 29th MP unit, moved to Los Banos, Laguan and the 11th U.S. Airborne Division parachuted to join the 29th. The mission now given to this combined unit was to hunt the Hukbalahaps, a Communist group in the Pacific Theater.

The Chinese Communist Party had meanwhile gained control of mainland China in 1949. Wary of another Communist insurgency in the world and recognizing the strategic importance of the Philippines, the United States sent military aid and advisers

to assist the Philippine government. Hukbalahaps," Microsoft® Encarta® Online Encyclopedia 2007

Plaintiff was injured in the fighting by a gunshot to his leg. The VA even on September 28, 1949 provided Petitioner with a document titled Certification. This letter states "[t]his is to certify that Pvt Borromeo I. [Levba spelling error on original file] 1001886 Inf. Who was admitted in this hospital on 22 April 1947." Note Plaintiff was injured during a raid on mount Bukaran. He was taken to 1st Station Hospital, Camp Olivas, Pampanga.

It is widely known that the CIA controlled the Philippine Secretary of Defense Ramon Magsaysay. This Secretary made a personal recommendation for Plaintiff for employment in 1952 as a result of Plaintiff's work for the U.S. Government. Secretary Magsaysay later became President of the Philippines.

In short, Defendant has plain denied Plaintiff's service injury, despite the fact Plaintiff was in a U.S. Military hospital for nearly two years recovering from a gun shot wound, obtained while in the employ of the U.S. Military. Plaintiff was also on one of the troop carriers headed for Japan, as part or the Japanese invasion. This invasion force was loaded up and headed towards Japan, but recalled only after the nuclear weapon attack had taken place in Japan.

Plaintiff was recognized and recommended by the CIA controlled Secretary of Defense of the Philippines for the work done for the benefit of the U.S.

This Court has the ability to look at Congressional mandates and the financial impact of those mandates. Congress made the Philippine resistance force part or the United States Military. Plaintiff has already obtained an Administrative ruling indicating that he was in fact part of the U.S. Military, however the VA has denied Plaintiff benefits he is entitled to. As such, allowing the VA to police itself, and be given the benefit of the doubt should cease in this case and others, since the level of abuse of process Plaintiff suffered from, and current Veterans suffer from would seem to approach the criminal level, if government immunity were not in existence.

This Court has the ability to look at Constitutional violations when there is a money mandating act connected to it. There are several of those areas of law this case cover such as the Tucker Act, Line of Duty Benefits, as well as Disability Benefits and this Court has jurisdiction to hear cases these areas.

## B. TOPICAL INDEX

A. Summary of the Argument………………………………… 1
B. Topical Index ……………………………………… 5
C. Table of Authorities ……………………………………… 7

D. Argument………………………………………………… 9

i. A VIABLE COMPLAINT IS ONLY REQUIRED TO CONTAIN A SHORT AND PLAIN STATEMENT 9

ii. MOTIONS TO DISMISS ARE DISFAVORED 9
iii. FAILURE TO SET FORTH CLAIM 9
iv. THE COURT DOES HAVE SUBJECT MATTER JURISDICTION OVER MR. LEYVA'S CLAIMS VIA MONEY MANDATING REQUIREMENTS OF THE TUCKER ACT AS MODIFIED BY FISHER AND WHITE MOUNTAIN APACHE TRIBE 10

v. FEDERAL COURT OF CLAIMS JURISDICTION VIA FISHER v. UNITED STATES, 11

vi. 10 U.S.C. § 1201 PROVIDES AT LEAST ONE BASIS FOR A TUCKER ACT CLAIM FOR PLAINTIFF. 11
vii. MONEY MANDATING DETERMINATION UNDER § 1201 SATISFIED BY PLAINTIFF 12
viii. DISABILITY RATING SYSTEM REQUIRED UNDER SAWYER WAS NOT GIVEN TO PLAINTIFF BASED UPON THE FRAUD BY DEFENDANT 13
ix. THIS COURT IS FULLY EMPOWERED TO GRANT DISABILITY PAY 16
x. STATUTE OF LIMITATIONS HAS NOT EXPIRED 16
xi. JUDICIAL REVIEW 17
xii. JUDICIAL REVIEW OF THE VETERANS ADMINISTRATION (VA) 19
xiii. STANDARD OF REVIEW 21
xiv. SPECIAL COMPENSATION 22
xv. FEDERAL JURISDICTION BASED ON FEDERAL FUNDING OF VEHICLES 23
xvi. JURISDICTION EXISTS TO EXAMINE DISABILITY CLAIMS 24

xvii. **DEFERENCE TO EXECUTIVE AUTHORITY DOES NOT EXTEND TO IGNORING BASIC DUE PROCESS CONSIDERATIONS** **25**

xviii. **JURISDICTION EXISTS TO EXAMINE DUE PROCESS CLAIMS** **26**

xix. **UNITED SALES V. UNITED STATES 34 FED CL.88 CONFERRED LIMITED DECLARATORY AUTHORITY ON THIS COURT OVER NON-MONETARY DISPUTES** **27**

xx. **DUE PROCESS FAILURES BY THE MILITARY ALLOW FOR A JUSTICABEL CONTROVERSY TO EXIST** **29**

xxi. **THE COURT OF CLAIMS HAS JURISDICTION IN MILITARY DISABILITY DISCHARGE CASES** **30**

xxii. **JURISDICTION EXISTS SINCE PLAINTIFF WAS DENIED A PHYSICAL EVALUATION FOR RETENTION, RETIREMENT AND SEPARATION HEARING** **32**

xxiii. **TUCKER ACT CAN BE SATISFIED BY A MEMBER OF THE MILITARY** **33**

xxiv. **FIFTH AMENDMENT TAKING** **35**

xxv. **THE COURT MAY CONSIDER ALL RELEVANT EVIDENCE, INCLUDING EVIDENCE OUTSIDE THE PLEADINGS WHEN RESOLVING A JURISDICTIONAL CHALLENGE** **35**

xxvi. **SALES CASE OPENS THE DOOR FOR NON-MONETARY DISPUTES, THUS WIDENING TUCKER** **35**

xxvii. **IN SANDERS, THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT HELD (1) THAT ANY ERROR IN THE SECRETARY OF VETERANS AFFAIRS' COMPLIANCE WITH NOTICE UNDER 38 U.S.C. § 5103(A) OR 38 C.F.R. § 3.159(B)(1) SHOULD BE PRESUMED PREJUDICIAL TO THE CLAIMANT, AND (2) THAT THE SECRETARY HAS THE BURDEN OF REBUTTING THIS PRESUMPTION. SANDERS, __ F.3D AT __, 2007 WL 1427720, AT *10.** **36**

E. **CONCLUSION** **37**

**F. Certification** **39**

**B TABLE OF AUTHORITIES**

Adkins v. United States 68 F.3d 1317, 1323 (Fed Cir. 1995) **29,30**

Collier v. United States, 56 Fed. Cl. 354. cited by Johnson v. United States, 79 F. Supp. 208, 211, 111 Ct. Cl. 750 (Ct. Cl. 1948) **27**

Decatur v. Paulding, citied in FISHER v. UNITED STATES, 2-5082 UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT 402 F.3D 1167; 2005 U.S. APP. LEXIS 3911MARCH 9, 2005, **17,18**

FISHER v. UNITED STATES, 2-5082 UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT 402 F.3d 1167; 2005 U.S. App. LEXIS 3911March 9, 2005, .

………**10,11,12,13,15,16,17,25,28,29,31,34,35,37,39**

Haskins v. United States 51 Fed Cl. 818 (2002) **34**

**Johnson v. United States, 79 F. Supp. 208, 211, 111 Ct. Cl. 750 (Ct. Cl. 1948)** **26**

Jordan v. United States, 205 Ct.Cl. 65 (1974) **31**

Morfeld v. Kehm, 803 F.2d 1452, 1454 n.3 (8th Cir. 1986) **9**

Murphy v. United States, 69 Fed. Cl. 593 (2006) **29**

Sales v. United States, 34 Fed. Cl. 88 **21,27,36**

*Sanders v. Nicholson*, __ F.3d __, No. 06-7001, 2007 WL 1427720 (Fed. Cir. May 16, 2007). **20,21,36**

Sawyer v. United States, 930 F.2d 1577 (Fed. Cir. 1991 **13,14,15,16,17**

Scroggins v. United States 184 Ct. Cl. 530, 397 F.2d 295 (1968) **34**

Ward v. United States 178 Ct. Cl. 210 (1967) **31,32,35**

United States v. White Mountain Apache Tribe, 537 U.S. 465, 155 L. Ed. 2d 40, 123 S. Ct. 1126 (2003), **10,11**

Wilson v. United States, 58 Fed. Cl. 760, 762 (2003) **35**

In re Grand Jury Subpoena, Joshua Wolfe, No CR 06-909065 Mis MMC (MEJ), Northern District of California, U.S. District Court **23,24**

Woodward v. United States, 871 F.2d 1068, 1072( Fed Cir. 1989). **38**

**CONSTITUTIONAL CLAIMS**

U.S. Const art II, 2 cl. 1. **17**

U.S. Const art III, 2 cl. 1. **33**

Fifth Amendment **26,35,36**

**MISCELLANEOUS**

10 U.S.C. § 1201 **11,12,13,15,33**

18 U.S.C. 844 (f)(1) **23**

28.U.S.C. 1491(a)(1) (“ Big Tucker Act’). **17**

38 U.S.C. 101(16) **38**

38 C.F.R. § 3.159(b)(1) **36**

Administrative Procedure Act 5 U.S.C. § § 551-59, 701-06 **17,20**

(John B. McDaniel, The Availability and Scope of Judicial Review of Discretionary Military Administrative Decisions, 108 Mil. L. Rev. 89, 95 (1985)). **18**

Daniel J. Meador, Judicial Review in Military Disability Cases, 33 Mil. L. Rev. 1 (1966)).. **18**

Hukbalahaps," Microsoft® Encarta® Online Encyclopedia 2007 **2,3**

Darrell L. Peck, The Justices and the Generals: The Supreme Court and Judicial Review of Military Activities, 70 Mil. L. Rev. 1, 78 (1975); **18**

Richard J. Pierce, Jr., Administrative Law Treatise, § § 17.5-17.9 (4th ed. 2002).” **13**

Fed. R. Civ. P. 8((a) (2). **17**

War-wounded “overwhelming’ army healthcare system, The Herald, March 14, 2007 **20**

## D. ARGUMENT

### i. A VIABLE COMPLAINT IS ONLY REQUIRED TO CONTAIN A SHORT AND PLAIN STATEMENT

While a complaint is only required to contain a short and plain statement, that statement must be "of [a] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2). Plaintiff's claim contains at least the plain statement that he is entitled to relief, and therefore he has satisfied Fed R. Civ. Proc 8 (a) (2).

### ii.MOTIONS TO DISMISS ARE DISFAVORED

Motions to dismiss a complaint after the Plaintiff's Opening Statement are disfavored and rarely granted. See Morfeld v. Kehm, 803 F.2d 1452, 1454 n.3 (8th Cir. 1986) (because opening is overview, it need not cover every element or critical fact). Accordingly, the prospect of dismissal on opening exists only when, from all available indications, the case is doomed to defeat. Since Plaintiff's case covers both statutory and case law in the complaint and this opposition to dismiss arguing that Plaintiff's case is viable, the case should not be dismissed.

### iii.FAILURE TO SET FORTH CLAIM

Case law does not require the opening to cover every element; Plaintiff however has stated at least the minimum elements to show that a legitimate case does in fact exist. Plaintiff's case should continue to go forward, and Defendant's argument that Plaintiff has failed to set forth a claim should be seen to have no merit. Plaintiff has shown that he

was part of the U.S. Military, as well as injured in combat. He has also stated that his injuries are permanent and hamper his ability to function. Plaintiff has therefore shown his case has merit and has set forth claims that this court has jurisdiction over. The fact Plaintiff has not necessarily stated every element of his claim is not fatal to his ability to ultimately recover which gives additional argument that the case should not be dismissed.

**iv.THE COURT DOES HAVE SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS VIA MONEY MANDATING REQUIREMENTS OF THE TUCKER ACT AS MODIFIED BY FISHER AND WHITE MOUNTAIN APACHE TRIBE**

Plaintiff can establish the existence of a money-mandating law source in order for

Federal Claims to have subject matter jurisdiction over the case under the Tucker Act. Recently, in United States v. White Mountain Apache Tribe, 537 U.S. 465, 155 L. Ed. 2d 40, 123 S. Ct. 1126 (2003), the Supreme Court restated the test for determination of whether a statute is money-mandating for Tucker Act jurisdictional purposes. After repeating the test from Mitchell II, the Court stated that:

“This "fair interpretation" rule demands a showing demonstrably lower than the standard for the initial waiver of sovereign immunity . . . . It is enough, then, that a statute creating a Tucker [*1174] Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be "lightly inferred," . . . a fair inference will do.”

Here, the requirement by the military to cover disabilities that were incurred while fighting for the government, in sanctioned military action exist. This requirement is

quite extensive and will be covered throughout this document; however at this state we have satisfied the fair inference of White Mountain.

The inference here, satisfying Tucker is that the Government ordered a known Philippine contingent into the U.S. Military. This new source of man power was used to fight the Japanese, as well as Communist forces in the Pacific Theater. This relationship, allows the Government to be held accountable economically. This economic benefit, is the final tie that allows the inference to be made, therefore jurisdiction under Tucker is permissible.

**v. FEDERAL COURT OF CLAIMS JURISDICTION VIA FISHER v. UNITED STATES,**

"For purposes of the case before us, however, this much is clear--under either the new or the old formulations Dr. Fisher has stated a claim that gives the Court of Federal Claims jurisdiction over his case." This was the holding of the U.S. Court of Appeals for the Federal Circuit. Plaintiff contends that he also has jurisdiction here, based on Fisher, 2-5082 United States Court of Appeals for the Federals Circuits, 402 F.3d 1167.

vi. **10 U.S.C. § 1201 PROVIDES AT LEAST ONE BASIS FOR A TUCKER ACT CLAIM FOR PLAINTIFF.**

Plaintiff alleges as did "Dr. Fisher alleges that 10 U.S.C. § 1201 provides the basis for his Tucker Act claim. Section 1201 enables the Secretary of a military branch to

authorize disability retirement pay for service members on active duty. Subsection (a) provides in relevant part."

"Upon a determination by the Secretary concerned that a member described in subsection (c) [i.e., on active duty] is unfit to perform the duties of the member's office, grade, rank, or rating because [**18] of physical disability incurred while entitled to basic pay . . ., the Secretary may retire the member, with retired pay . . ., if the Secretary also makes the determinations with respect to the member and that disability specified in subsection (b)."

10 U.S.C. § 1201(a). Subsection (b) requires the Secretary to make certain determinations, including that "the disability is of a permanent nature and stable," and that "the disability is not the result of the member's intentional misconduct or willful neglect**."** There is no showing that Plaintiff was shot in action in either an intentional or negligent fashion by Plaintiff in a self inflicted manner. The medical records prove the loss of two inches to Plaintiff's leg , and that loss is permanent and not subject to return back to normal. The elements of this section have been satisfied.

## Vii. MONEY MANDATING DETERMINATION UNDER § 1201 SATISFIED BY PLAINTIFF

Plaintiff should obtain a money- mandating determination of Section 1201, as did Dr. Fisher. "In this case, Dr. Fisher has little difficulty establishing that § 1201 is understood

as money-mandating. Section 1201 was the statute alleged to be money-mandating in Sawyer v. United States, 930 F.2d 1577 (Fed. Cir. 1991). Despite the presence of the word "may" in the statute, in Sawyer we determined that the Secretary has no discretion whether to pay out retirement funds once a disability is found qualifying. Id. at 1580. Thus, we held [*1175] that the statute is money-mandating because when the requirements of the statute are met--i.e., when the Secretary determines that a service member is unfit for duty because [**19] of a physical disability, and that disability is permanent and stable and is not the result of the member's intentional misconduct or willful neglect--the member is entitled to compensation. See id."

**viii. DISABILITY RATING SYSTEM REQUIRED UNDER SAWYER WAS NOT GIVEN TO PLAINTIFF BASED UPON THE FRAUD**

Plaintiff states that Defendant, by totally denying Plaintiff an opportunity to claim disability originally based on the gun shot injury and nearly two years in the military hospital has violated Sawyer. Sawyer can be said to stand for the proposition that a rating or qualifying needs to be done. This rating or qualifying was totally denied to Plaintiff on his exit, because of the incorrect basis that he was not part of the U.S. Military, when, according to ***38 C.F.R. 3.9(a), on December 10, 1941, when Plaintiff was inducted into the U.S. Army, to the date Petitioner was medically discharged from his more than two year stay in the U.S. military hospital on September 27, 1949 is totally juxtaposition to 38 C.F.R. 3.9(a), mandating the inclusion of the Philippine force into the U.S. Military.***

The VA even on September 28, 1949 provided Petitioner with a document titled Certification. This letter states "[t]his is to certify that Pvt Borromeo I. [Levba spelling error on original file] 1001886 Inf. Who was admitted in this hospital on 22 April 1947 and was discharged from sv AFP, under the provisions of US AR 615-361 for physical disability contracted in line of duty eff 27 September 1949 per SO #182 par 2 HNDF dtd 8 August 1949 as per records on file in this office was cleared for all government property responsibility and money accountabilities in this hospital. Signed by Potenciano Baccay 1st Lieut. MAC Actg Co, Det of Patients.

Despite this acknowledgement by Potenciano Baccay, 1st Lieutentant that Petitioner's injury came from the line of duty, Petitioner has been unable to obtain subsequent VA medical benefits, educational benefits, disability benefits and retirement benefits.

Once the rating is done, then if the disability is determined to be permanent and not the result of a member's intentional or misconduct actions, compensation should flow. Failure to do such a test or qualifying, to Plaintiff was a failure under Sawyer.

Because of Defendant's actions, the rule of law under Sawyer was violated. Pursuant to this Sawyer violation the Court of Federal Claims possess jurisdiction to entertain Secretary's decision not to appoint Petitioner to a disability list, 10 U.S.C. 1201-21 (1992); Sawyer v. United States, 930 F. 2d 1577.

"The Government here argues that Sawyer should be understood differently. According to the Government, § 1201 is money-mandating only for service members who qualify for benefits under the statute, i.e., those members who have been found by the Secretary to be unfit for duty. But that understanding turns the law on its head--according to the Government the only persons entitled to judicial relief are those who do not need it because they were awarded disability status; those who were denied that status cannot get relief because they were denied what they sought." Fisher, supra. This "turning the statute on its head", according to the court's argument in Fisher, is the same argument Plaintiff has; however, Plaintiff's argument is stronger. Plaintiff argues that when one is denied a proper discharge review when he leaves the service, based on the fraudulent claim he was not U.S. Military, when the exhibits show he was injured while fighting for the U.S., and stayed for over a year in a Military hospital has denied Plaintiff due process to correct this error. That denied individual, in this case Plaintiff, should be entitled to relief that will ultimately allow medical review, and then a financial determination, as well as a determination regarding the administrative and due process violations.

**ix. THIS COURT IS FULLY EMPOWERED TO GRANT DISABILITY PAY**

To disallow review and or recovery such as Defendant requests, should resulting in the court's previous statement "[s]uch a perverse understanding of Congress's purpose cannot be the law; it is inconsistent with the literal language of the statute and with our construction of the statute in Sawyer. The fact that the statute imposes requirements for the payment of money does not mean that only claimants who have been determined by a Government official to meet those requirements have a right to the money the statute provides. It is [**20] the statute, not the Government official, that provides for the

payment. If the Government official's determinations under the statute are in error, the court is there to correct the matter, and to have the proper determinations made." Fisher supra. This same ability to correct the matter and make the proper determinations, are exactly what Plaintiff is requesting.

"The Court of Federal Claims is fully empowered to grant such remedies." Fisher, here was requesting disability retirement pay. "Even if it can be said that the complaint was in artfully drafted, that does not change the basic thrust of the cause." Fisher, supra. Similarly, Plaintiff argues that this court has the ability to grant the disability retirement pay, and the disability benefits to Plaintiff, as the Federal Court of Appeals state the Federal Court of Claims could do with Fisher.

**x STATUTE OF LIMITATIONS HAS NOT EXPIRED**

Petitioner discharged from the Military, effective 1949, with an honorable discharge after more than 8 years of service. Because of the past and present failure to adequately disclose accurate Philippine missions, presently and in the past, the Statute of Limitations should only start at the time the Government has fully released this Data. Since this has not yet fully happened, it seems reasonable to argue the Statute of Limitations has not even started. As such, Petitioner's case is not past the Statute of Limitations. Accordingly, this case is within the Statute of Limitations

## xi. JUDICIAL REVIEW

"Dr. Fisher notes that, contrary to the Congressional mandate of non-reviewability in the civilian cases, the broad language of the Tucker Act, specifically 28 U.S.C. § 1491(a)(2), argues in favor of judicial review."

The question of whether actions by administrative officers of the Government, acting under Article II of the Constitution, are subject to review by judicial officers, acting under Article III, has roots back to the Nineteenth Century. One of the earliest cases addressing the question, Decatur v. Paulding, 39 U.S. (14 Pet.) 497, 10 L. Ed. 559 (1840), was a military case involving the application of a federal pension statute to the widow of a member of the Navy.

"It would extend unduly this opinion to recite in detail the evolution of judicial review of administrative action during the more than 160 years since Decatur v. Paulding, including the impact of Congress' enactment in 1946 of the Administrative Procedure Act (the APA). 5 U.S.C. § § 551-59, 701-06. Today the doctrine of non-reviewability of Executive action is understood to have lost much of its force; although the doctrine has occasional resurgences, it is now generally accepted that there is a presumption in favor of judicial review of administrative action except when Congress has expressly mandated otherwise. See generally Richard J. Pierce, Jr., Administrative Law Treatise, § § 17.5-17.9 (4th ed. 2002)."

"Judicial review of administrative decisions made by an agency of the military regarding service members has likewise undergone significant change. The APA itself provides

exemption only for specified military functions, (See 5 U.S.C. § 551(1)(F) (courts martial and military commissions); 5 U.S.C. § 551(1)(G) (military authority exercised in the field in time of war or in occupied territory leaving the general run of military administrative decisions presumably subject to the Act. (John B. McDaniel, The Availability and Scope of Judicial Review of Discretionary Military Administrative Decisions, 108 Mil. L. Rev. 89, 95 (1985)).

An exhaustive study based on an extensive review of Supreme Court decisions in the years since Decatur v. Paulding concluded that there are four established categories of legal challenges to military administrative personnel actions that are judicially reviewable: (1) lack of jurisdiction over the person; (2) violation of statutory authority; (3) violation of the military's own regulations; and (4) violation of the Constitution. (Darrell L. Peck, The Justices and the Generals: The Supreme Court and Judicial Review of Military Activities, 70 Mil. L. Rev. 1, 78 (1975); see also Daniel J. Meador, Judicial Review in Military Disability Cases, 33 Mil. L. Rev. 1 (1966)).

In each of these categories the issue is the one posed in Reaves v. Ainsworth: did the military stay within the scope of its lawful powers in its decision-making. "Peck, supra, at 78-79, notes as an exception a subset of the violation of the Constitution category, when the question raised is not whether the governing statute is unconstitutional, but whether the action taken pursuant to the statute is.

"The question of judicial reviewability becomes more difficult when the issue is whether the military decision, though within the scope of the authorized power, is on the merits

arbitrary or capricious, or involves a denial of due process, or is unsupported or otherwise unlawful." In Plaintiff's case, denying him medical benefits claiming he was non US military, when that is clearly incorrect and in violation of statute should allow judicial reviewability, since the authorized power for the conflict by Congress was exceeded. Defendant's previously mentioned activity sets forth satisfying the arbitrary, capricious and denial of due process elements, as well as unlawful acts done by Defendant. Satisfying these elements provides jurisdiction in this Court.

## xii. JUDICIAL REVIEW OF THE VETERANS ADMINISTRATION(VA)

Recently it has come to National Attention the abysmal failure of VA run Walter Reed VA Medical Center, as well as the VA bureaucracy and substandard care. The VA has been Federally Mandated to provide a system for injured veterans to obtain care. This Federal Mandate, as well as federal funding, should similarly satisfy the money mandating requirements needed for jurisdiction in this Court.

Presently individuals that manage the VA have been forced to retire. Individuals whom have management ties to the VA Walter Reed hospital have similarly been ousted in the last 90 days. Plaintiff expects that the current head of the VA will be discharged by the time Congress and the Senate finish their respective investigations. Congress and the Senate are investigating the systemic violations as it relates to Veteran Care, which in some instances amounts to less than third world treatment of some of our veterans.

Additionally "[t]here are only 30 physical evaluation staff to process disability claims for the 32,000 US casualties of the two wars and almost every medical holding facility for returning veterans lacks qualified staff." This statement provides a current basis on why even if the VA could have jurisdiction on this matter, to demand Plaintiff be put into an overburdened and poorly run operation is effectively a denial of due process as well as the Administrative Procedure Act. "The VA has now ordered a "full and immediate review" of facilities at its 1400 hospitals and clinics, while the White House has instructed the Pentagon to review its procedures for handling the wounded." Plaintiff advises this court, such an immediate offer to review all VA operations, tends to indicate that even the VA knows it is and has provided less than proficient medical care and administrative oversight. To force Plaintiff back into an acknowledged backwater system, denies Plaintiff a real opportunity to have his case heard, as well as be provided the proper medical care. "The US Army's healthcare system for wounded soldiers coming back from Iraq and Afghanistan has been "overwhelmed" by sheer numbers, according to a new government report by the service's inspector general." Plaintiff argues that overwhelmed is too kind a word, but that this Court should assist in providing an opportunity to be heard by the previously voiceless veterans. War-wounded 'overwhelming' army healthcare system, The Herald, March 15, 2007

Defendant attempts to argue that Plaintiff, a disabled veteran whom has been mistreated by the military establishment, has no jurisdiction other than to go back to the corrupt VA Appeals Office. Given the Sanders decision, infra( May 2007) because Defendant has violated procedural requirements the requirements to file a claim by a Plaintiff no longer

restrain Plaintiff. Rather, as Sander's states it, the Court can fashion a remedy to Plaintiff, in light of Defendant's procedural and due process violations.

Requiring Plaintiff to only litigate his claim in front of the broken, overtaxed and previously misdirected VA would be an error. Disallowing Plaintiff this forum to address his grievance, may set back the tidal wave of pending change regarding the VA bureaucracy and benefit system that is presently being investigate by Congress and the Senate. Alternatively, allowing Plaintiff's claim to go forward may assist in modifying a crumbling effort for the reform of the military and VA as it relates to benefits and medical care for injured veterans for both the World War II conflict, and the present ones, would be in line with Sanders, infra.

**xiii. STANDARD OF REVIEW**

Equitable and extraordinary relief is available after the amending of the Tucker Act. United Sales v. United States, 34 Fed. Cl. 88 " In 1988, however, the Tucker Act was amended, conferring limited declaratory judgment authority on this court over non-monetary disputes. The amendment provides in pertinent part:

"(3) To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security."

This case does not stand for the proposition that national defense and national security issues are to be automatically ruled in favor of the government, only that these cases may be given due regard. Plaintiff is only requesting that Defendant be held to some standard, other than that as King, such that Defendant is responsible to pay for damages it reasonably did cause Plaintiff to suffer. The facts of this case stand not upon National Defense, but how the Military worked its way around Congressional orders to include the Philippine Military into the U.S. Military.

Therefore Plaintiff requests that the due regard standard given to the military, be set aside in this case, since the military actively sought to deceive the public, and the Government that actions. Total deference to the Military should not be allowed when the Congressional authorization is violated.

Petitioner's VA denial could also be a function of hiring and attrition in the Local VA office in Los Angeles. Counsel has been advised that no significant hiring has been done in five years and the cases are backlogged years with the Los Angeles VA. Again, the denial of Petitioner's VA benefits could be an error so egregious as to be criminal, or the error could be based on the simple fact that staffing precludes a VA examiner from actually reading the statute where the U.S. Army absorbed the Reyes Regiment of the Philippines.

**xiv SPECIAL COMPENSATION**

Under 10 U.S.C. Section 1413(a) Plaintiff would qualify for twenty-five (25) years of service if Petitioner were not too sick to stay in the military, as well as, qualify for a

disability that is compensable under the laws of the Secretary of Veterans Affairs and while engaged in hazardous service when Petitioner was injured from his bullet injury. Plaintiff was exposed to combat, injured while in combat all for the benefit of fighting the communist threats the United States was worried about. As such, Plaintiff should be able to request Special Compensation under 10. U.S.C. S. Section 1413(a). This special compensation is yet another avenue of entitlement to gain this Court's jurisdiction

## xv FEDERAL JURISDICTION BASED ON FEDERAL FUNDING OF VEHICLES

18.U.S.C. 844 (f)(1) criminalizes the following: maliciously damaging or attempting to damage by means of fire or an explosive, any vehicle in whole or in part owned or possessed by any institution or organization receiving Federal financial assistance. In re Grand Jury Subpoena, Joshua Wolfe, No CR 06-909064 Mis MMC (MEJ), Northern District of California, US District Court.

If the Federal Government can gain jurisdiction, as it has in the Wolfe case, by claimed possible damage, not actual damage other than a broken tail light, to a San Francisco police vehicle that was partially funded by the Federal Government, then Federal Jurisdiction should similarly be allowed in Plaintiff's case. In short, Plaintiff was injured while working for the U.S. Military in the Philippines. He was paid by the U.S. Military,

issued U.S. Military weapons and clothing. He was doctored for nearly 2 years by U.S. Doctors in a U.S. funded military hospital.

Just as the Federal Government has bootstrapped Federal jurisdiction in the Wolfe case, based on possible damage to a partially federally funded San Francisco Police vehicle, Plaintiff can similarly bootstrap Federal jurisdiction to the injury he received while working on and around Federally funded U.S. base and being operated on by U.S. Military doctors and nurses to remove a bullet shot by enemy forces. Petitioner's activities, injury and resultant care show enough relation to Defendant that jurisdiction can be gained in this court from the use and exposure to Government vehicles.

Also note, the burden satisfied in Wolfe was to a criminal case, rather than a civil case. Since the burden must have been met as to jurisdiction in a criminal matter, jurisdiction must certainly exist in a civil matter.

Additionally, the complete lack of due process Plaintiff received is in violation of Federal Due Process, which again attaches to Federally funded equipment, i.e. the knives, sutures and bedding that Petitioner consumed with his recovery.

## xvi. JURISDICTION EXISTS TO EXAMINE DISABILITY CLAIMS

Plaintiff, using Fisher , is different in that Fisher was given three separate disability ratings. Plaintiff has been denied disability benefits for his gun shot injury which

resulted in shortening Plaintiff's leg. Plaintiff was thereby denied any rating obtained by Fisher while Fisher was active. FISHER, v. UNITED **STATES 72 Fed. Cl. 88;** 2006 U.S. Claims LEXIS 227, July 28, 2006 "n2 Under AFI 36-3212 paragraph 3.24.1, the Physical Evaluation Board ("PEB") may place a service member on the TDRL if it finds that the disability is "permanent in character, but not stable in degree." The service member remains on the TDRL for a period of time for the purpose of allowing the condition to stabilize. At the end of the period, the service member is either given a disability rating and retired or reinstated into active duty". This issue, however, would not be moot with Plaintiff's case since Plaintiff has been denied further treatment, based on the fraudulent claim he was not actually a member of the U.S. Military. To solve this issue, the Court should allow the case to progress, and not Grant Defendant's Motion to Dismiss.

## xvii. DEFERENCE TO EXECUTIVE AUTHORITY DOES NOT EXTEND TO IGNORING BASIC DUE PROCESS CONSIDERATIONS

"[D]eference to Executive authority does not extend to ignoring basic due process considerations, however. When there is a question of whether reasonable process has been followed, and whether the decision maker has complied with established procedures, courts will intervene, though only to ensure that the decision is made in the proper manner." Fisher Appeals, Supra.

Plaintiff was not afforded the established procedures, the claim by Defendant of a non justiciable question fails, and Plaintiff should be allowed to have a determination as to the reasonable processes and procedures which should have been followed, but were not.

As has been previously stated in this document and the Petition, the Military, and the VA have actively, and through omission attempted to deny Plaintiff and others like him due process. Defendant provided decisions were not made in the proper manner, nor has due process been extended to Plaintiff.

## xviii. JURISDICTION EXISTS TO EXAMINE DUE PROCESS CLAIMS

Plaintiff states that this Court has jurisdiction for Due Process claims when they are tied to a money-mandating requirement. Here Plaintiff has, among other claims, a Fifth Amendment claim. Because of this Fifth Amendment claim, Plaintiff's case will not follow the Collier decision because Collier failed "to state a Fifth Amendment takings claim" Collier v. United States, 56 Fed. Cl. 354. cited by Johnson v. United States, 79 F. Supp. 208, 211, 111 Ct. Cl. 750 (Ct. Cl. 1948)

Similarly this Court does have jurisdiction as to the failed payments of Federal money to ultimately be received by Plaintiff. If Defendant can fund money into the Military hospital Plaintiff occupied for over two years, then it can additionally fund money to care for the injured and left behind soldiers whom were serviced in that same hospital.

**xix. UNITED SALES V. UNITED STATES, 34 FED. CL. 88 CONFERRED LIMITED DECLARATORY JUDGMENT AUTHORITY ON THIS COURT OVER NONMONETARY DISPUTES**

United Sales v. United States, 34 Fed. Cl. 88 conferred limited declaratory judgment authority on this Court over non-monetary disputes.

"[W]hen important individual rights are at issue and are allegedly the subject of administrative abuse, it can be argued that some room must remain for effective judicial review--the fact that [**56] an administrative personnel decision is made by an agency that is part of the military as distinct from an agency in some other part [*1187] of the Executive branch should not per se immunize it from judicial scrutiny." The Army and Mercenary units are subsets of the Executive branch should not be per se immunized from judicial scrutiny as to Plaintiff.

"First and most important is the fact that the issue before us is not one of military governance and authority going to the question of war fighting; the issue is an administrative one, the outcome of which results only in a grant or denial of disbursements Treasury.

Looking then to the suggested factors to be balanced, the right asserted by Dr. Fisher is one to well-established pension benefits for those who suffer duty-related injury, and the denial of which would be a clear and specific financial injury. From the military side, the

discretionary decision whether Dr. Fisher should be compensated for an alleged injury does not seem to be particularly a military discretion as such; its judicial review would not seem to intrude to any great extent on the needed prerogatives of the President in conducting military affairs. Nor is the expertise required to decide the case especially that of the military; to the extent courts are called upon to review medical decisions of all sorts to determine whether [**58] there has been an abuse of discretion, this one is not that different. Further, a decision in favor of Dr. Fisher does not interfere with a particularly military function--the same problem of eligibility for disability compensation arises in the civilian context as well, and since the issue is not whether Dr. Fisher should be returned to military duty but how if at all he should be compensated for past duty, any special requirements of the military community would not seem to be significantly implicated," Fisher Appeals, supra.

Having this Court examine the procedures used, as stated in Fisher above, the issue is not whether Plaintiff "should be returned to Military duty but how, if at all, he should be compensated for past duty, any special requirements of the Military Community would not seem to be significantly implicated." The correction for blatant misrepresentations made to the public, Congress and Plaintiff, by Defendant does not interfere with Military functions, but rather solves Plaintiff's problem of eligibility for disability compensation, under Fisher.

**xx. DUE PROCESS FAILURES BY THE MILITARY ALLOW FOR A JUSTICABLE CONTROVERSY TO EXIST**

Due Process failures by the Military allow for a justiciable controversy to exist.

"[W]e have consistently noted that a challenge to a particular procedure followed by the military in rendering a decision may present a justiciable issue." Adkins v. United States, 68 F.3d 1317, 1323 (Fed. Cir. 1995). "Even when Congress has given the military discretion in conducting its affairs, the military is bound to follow its own procedural regulations should it choose [**27] to promulgate them." Murphy, 993 F.2d at 873 (citing Sargisson, 913 F.2d at 921). In this case, Defendant was obligated by a Congressional Statute to treat the Philippine military which was absorbed into the U.S. Military, the same as the U.S. Military. Defendant still decided to deny in error Plaintiff his benefits. Therefore the wide swath given in Murphy, supra is truncated since Defendant did an end around, the mandate.

Additionally "[a] court may decide whether the military has complied with procedures set forth in its own regulations because those procedures by their nature limit the military's discretion." Id. at 873. "Such a case presents a justiciable controversy because the 'tests and standards' against which the court measures the military's conduct are inherent in the requirements of the applicable regulation itself." Adkins, 68 F.3d at 1323. Since the military is beholding to dictates of the Congress, and Defendant has not followd the dictates, Plaintiff should not be seen as limited at all, since only by Defendant following

proper protocol would limited discretion attach. By deceiving the public, Congress and individuals such as Plaintiff, Defendant has widened the limited reviewability granted in Adkins.

Similarly Plaintiff has a case which presents a justiciable controversy because the tests and standards against which the court measures the military's conduct are inherent in the requirements of the applicable regulation itself. The fact the military broke the tests and standards to the service members, such as Plaintiff; Plaintiff has greater latitude in a justicable controversy, not a reduced level.

## xxi. THE COURT OF CLAIMS HAS JURISDICTION IN MILITARY DISABILITY DISCHARGE CASES

"[T]he Court of Claims, not cited by either party, in which that court in military disability discharge cases did not limit its review, as was generally the case in military matters if any review was allowed, to the question of whether proper procedure was followed. Instead, the court reviewed the merits of the military's decision, [**30] albeit applying a deferential standard of review." Fisher Appeals, Supra

"Ward v. United States, 178 Ct. Cl. 210 (1967), was the first of these cases in which the Government lost. Despite having had his right kidney surgically removed while on active duty, plaintiff was found [**32] physically qualified for release from active duty with no physical defects; that finding was affirmed by the Navy's review boards. After reviewing the record, the Court of Claims, citing to Towell and Furlong, concluded that "on the whole record, it is found that plaintiff was not physically fit for active duty at sea or on

foreign service at the time of his release to inactive duty and that the decision of the Board for the Correction of Naval Records to the contrary is not supported by substantial evidence and is arbitrary." Id. at 219.

Jordan v. United States, 205 Ct. Cl. 65 (1974), followed the Ward model, reversing the Army's refusal to grant disability retirement pay to an Army Sergeant who, at the time of his discharge, was deemed to be physically fit for duty. In a lengthy decision, the Court of Claims reviewed the medical history Plaintiff presented and the records before the Army review boards, including the qualifications of the various doctors. The Court concluded:

"Even though defendant's evidence in the instant case, considered of and by itself, might support the administrative decision by the Army to discharge plaintiff [**33] as physically fit, we find, as hereinafter discussed, that there is "opposing evidence [principally, Plaintiff's medical record with the VA] so substantial in character" as to detract from the weight of the evidence in support of the Army discharge, and to render it "less than substantial on the record as a whole."" Ward, supra. Here, by Plaintiff being denied access and treatment related to his gunshot injury, obtained while in service to the U.S. Military to thwart Communism, based on fraud Defendant perpetrated on Plaintiff, Congress and society in whole. The opposing evidence is so substantial as to allow Plaintiff to proceed for his Disability benefits. We believe that Plaintiff's evidence so substantially outweighs in character the

original claims and rules, that as in Ward the claims by Defendant have been "less than substantial on the record as a whole", or more bluntly a package of deceit.

If this court could review a discharge in Ward, then other Military decisions which have been sacrosanct such as disability review should also come under this court purview, when Defendant, has as in Ward been "less than substantial on the record as a whole." Or using Plaintiff's take on the case, used fraud, deceit to deny in error claims such as Plaintiff's that has previously resulted in death, and an end result which Plaintiff is attempting to mitigate, despite the denial of medical care by Defendant.

## xxii JURISDICTION EXISTS SINCE PLAINTIFF WAS DENIED A PHYSICAL EVALUATION FOR RETENTION, RETIREMENT AND SEPARATION HEARING.

Plaintiff was denied a Physical Evaluation for Retention, Retirement, and Separation hearing, The Fisher case also focused on the separation physical one must have. Fisher supra, at foot note N6 "Physical Evaluation for Retention, Retirement, and Separation," was promulgated on June 14, 1994 pursuant to the Secretary of the Air Force's authority under 10 U.S.C. § 1201 (2000)."

Plaintiff was denied such an evaluation. This denial was arbitrary, capricious, contrary to law, or unsupported by substantial evidence and also is a manner of obtaining jurisdiction in this Court.

## xxiii. TUCKER ACT CAN BE SATISFIED BY A MEMBER OF THE MILITARY

The authority of the Federal courts to protect individual rights and to decide controversies--"the judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States . . ." U.S. Const. art. III, § 2, cl. 1.--must be balanced against the authority of other Constitutional decision makers. Plaintiff, has stated a claim that relief can be granted, thus both jurisdiction and the ability to offer the requested relief can be heard in the Federal Court of Claims, to balance the authority of the other Constitutional decision makers.

"[I]t is clear from [**35] this review that the controlling precedents entitle a discharged service member to judicial review on the merits of the question of eligibility for disability retirement pay. The cases are consistent that this review is conducted under a deferential standard of review, essentially the standard under which administrative agency decisions are reviewed: whether the decision is arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law." Fisher Appeals, Supra

Haskins v. United States, 51 Fed. Cl. 818 (2002), in which a discharged Veteran's suit against the Army for medical retirement with full disability pay was found justiciable

(though the veteran lost on the merits). Plaintiff believes he also, under Haskins, supra should have full disability pay, given the bullet injury he received and the subsequent leg shortening were known at the time to diminish Plaintiff's mobility. Denying both the loss of mobility, as well as the fact Plaintiff was in fact a part of the U.S. Military should be both justiciable here in this case.

Fisher Appeals, supra stated, and Plaintiff believes that "the case before us stands outside these admonitions--the issue is not the composition of the military, but the society's legal obligations to those who are no longer within the military forces. We are compelled by logic and the force of precedent to conclude that this question is properly subject to judicial review, and that a deferential standard of review strikes the correct balance here. (Of course, courts can provide review only so long as there [*1183] are tests or standards by which the decision can be measured.)"

The Court of Claims in Scroggins v. United States, 184 Ct. Cl. 530, 397 F.2d 295 (1968), "[T]here remained a residual level of review despite the statute: disability decisions could be reviewed under a highly deferential standard to determine whether there had been "a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative decision." Id. at 297 (internal quotation marks omitted)." This substantial deviation from procedural rights similarly gives Plaintiff the ability to have the Court of Claims review that deviation. That deviation as to Plaintiff and others like him, have been so far away from authorized legislation, and denying procedural rights based on the failure of

Defendant to recognize the statutes which govern Defendant, created by congress a jurisdiction now is available here.

**xxiv. FIFTH AMENDMENT TAKING**

Here, Plaintiff has alleged a Fifth Amendment claim. By disability pay being denied to Plaintiff. Military disability has attached to it a retirement portion, having with it tax free benefits. By Defendant doing the above actions and more, they have deprived Plaintiff of his disability benefit which are Federal funds and Federal benefits. This denial allows a legitimate Fifth Amendment claim to exist.

**xxv. THE COURT MAY CONSIDER ALL RELEVANT EVIDENCE, INCLUDING EVIDENCE OUTSIDE THE PLEADINGS WHEN RESOLVING A JURISDICTIONAL CHALLENGE**

" Further, the Court may consider all relevant evidence, including evidence outside the pleadings when resolving a jurisdictional challenge." Wilson v. United States, 58 Fed. Cl. 760, 762 (2003) Plaintiff contends that by the expanded version of looking at relevant evidence combined with looking at the pleadings, the jurisdictional challenge Defendant proffers is nothing more than a ruse to deny Plaintiff's Fifth Amendment claim, thereby granting him a jurisdictional ticket to this Court of Claims forum.

**xvi. SALES CASE OPENS THE DOOR FOR NON-MONETARY DISPUTES, THUS WIDENING TUCKER.**

United Sales v. United States, 34 Fed. Cl. 88 provides for an expansion of jurisdiction, in

even non monetary disputes. " In 1988, however, the Tucker Act was amended, conferring limited declaratory judgment authority on this court over nonmonetary disputes." As such, the limiting nature of jurisdiction in this Court has been expanded by the Congressional expansion of Tucker, as well as the case law in Sales, infra. This expansion has been at least from 1988. This expansion is yet another reason to allow Plaintiff's case to progress.

**xvii. In Sanders, the United States Court of Appeals for the Federal Circuit held (1) that any error in the Secretary of Veterans Affairs' compliance with notice under 38 U.S.C. § 5103(a) or 38 C.F.R. § 3.159(b)(1) should be presumed prejudicial to the claimant, and (2) that the Secretary has the burden of rebutting this presumption. Sanders, __ F.3d at __, 2007 WL 1427720, at *10.** IN RE: 38 U.S.C. § 5103(a) and *Sanders v. Nicholson*, __ F.3d __, No. 06-7001, 2007 WL 1427720 (Fed. Cir. May 16, 2007).

Sanders goes further to state that when Defendant fails to follow rules, "[t]herefore, the Court will suspend the application of certain Rules in cases where the appellant has alleged an error under section 5103(a) and/or § 3.159(b)(1), and will direct appropriate proceedings." Plaintiff alleges that 38 U.S.C. 5103 imposes on the VA a duty to provide certain notice to certain claimants applying for Veterans' Benefits. Given than Defendant has not followed it own rules regarding the notices, under Sanders, this is presumed to prejudicial to Plaintiff. Defendant has not met the burden of rebutting the presumption. Additionally, the rules requiring Plaintiff to follow a narrow set of guidelines when Defendant has blatantly failed to satisfy the notice requirements, allows the Government to direct appropriate proceedings. One of those proceedings should be to allow the case to continue.

Plaintiff further alleges that 38 C.F.R. 3.159(b)(1) requires notice, and that has not been

satisfied by Defendant. As stated above, this lack of notice is deemed prejudicial to Plaintiff. Essentially when Defendant fails to follow it's own rules, then the Court can suspend the application of certain requirements to Plaintiff, and direct appropriate proceedings. Plaintiff takes this language of Sanders, Infra to state that the Court can craft a remedy despite disability claim requirements since Defendant did not follow their own notice requirements, i.e. in this case denying Plaintiff his rightful inclusion into the U.S. Military, since such inclusion has been provided by statute.

Since no notice was provided then Plaintiff can use the Court of Federal Claims to argue its due process and money mandating provisions which allow this Court to provide jurisdiction.

**E. CONCLUSION**

Plaintiff has jurisdiction in this Court, and the Petition identifies significant and substantial viable claims. Because of these reasons the case should go forward and not be dismissed. Given that Petitioner worked for the Defendant; Petitioner is protected by the maxim, that the release from service must not violate service regulations or the Federal Constitution. 10 U.S.C. 681(a) (1992): Woodward v. United States, 871 F.2d 1068, 1072( Fed Cir. 1989).

Petitioner was serving on Active service and since Petitioner was injured and became disabled in the Line of Duty, by Veterans Benefits should be available to Petitioner. 38 U.S.C.. 101(16); 38 C.F.R. 3.1 (k), 3.303(a) (2005).

Plaintiff argues that Defendant did not follow the notice provisions, covered Sanders, infra. This failing by Defendant allows the Court to craft a remedy while allowing Plaintiff not to be denied benefits. Plaintiff requests the case for disability benefits, medical benefits and back pay to continue in accordance with the Congressionally mandated authority provided for in this Court.

Plaintiff requests that this case not be dismissed because this Court has proper jurisdiction to hear this case.

Respectfully submitted,

07/16/07 s/Jeffrey D. Moffatt

Admitted U.S. Supreme Court and U.S. Court of Federal Claims
Attorney for Plaintiff Leyva
(661) 945-6121 / Fax (661) 945-3019
43625 N Sierra Hwy, Suite A.
Lancaster, CA 93534
**E-mail Address: jeffreymbajd@hotmail.com**

F. CERTIFICATE **OF FILING**

I hereby certify that on July 16, 2007, a copy of the foregoing "PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System. July 16, 2007.

s/Jeffrey D. Moffatt, Attorney, for Petitioner
43625 N Sierra Hwy, Suite A
Lancaster CA 93534
(661) 945-6121
FAX (661) 945-3019
EMAIL: Jeffreymbajd@hotmail.com